258 So.2d 719

**Ellen Patricia SHEEHAN**

v.

**LIBERTY MUTUAL FIRE INSURANCE COMPANY, a Corporation, et al.**

**6 Div. 888.**

Supreme Court of Alabama.

Jan. 27, 1972.

Rehearings Denied Feb. 24, 1972.

Dunn, Porterfield, McDowell & Scholl, Birmingham, for appellant.

Sadler, Sadler, Sullivan & Sharp and Eugene P. Stutts, Birmingham, for appellees Buford L. Chesser and Helen Chesser.

Lange, Simpson, Robinson & Somerville and Lyman H. Harris, Birmingham, for appellee Liberty Mutual Fire Ins. Co.

BLOODWORTH, Justice.

This is an appeal by one of several claimants to the proceeds of the uninsured motorists coverage under an automobile liability insurance policy after a decree was rendered awarding the proceeds to the several claimants on a pro rata basis.

The insurance company paid $17,000 into court by Bill of Interpleader, alleging there were three claimants to the fund and that their claims exceeded the policy limits of $20,000. The insurer claimed a reduction of $3,000 from the policy limits for the amounts it had paid the three claimants under the "Medical Expense Coverage" of the policy.

The trial judge, sitting in equity, ordered the insurance company to pay the $3,000 into court, awarded a $250 attorney's fee to the insurer's attorney, taxed the court costs against the "fund," and divided the remainder between the claimants, one-third each.

From this award of an attorney's fee and the division of the proceeds, the appellant, one of the claimants, prosecutes this appeal. Appellant's position is that she is entitled to priority against the "fund," and since it is inadequate to safisfy her claim, she is entitled to all of it. She contends

the trial judge's decree is erroneous in ordering a proration between the claimants, and in allowing an attorney's fee.

We concede that the appellant's position is well taken, in part, and that the trial court's decree is erroneous in several aspects, as will hereinafter appear.

The facts, out of which this litigation arose, were stipulated. The pertinent details are as follows.

On April 19, 1969, appellee Buford L. Chesser was operating his 1968 Chevrolet automobile on U. S. Highway 280 in Tallapoosa County, Alabama, when his car was struck by an automobile being operated by an uninsured motorist, Troy Lee Pitts. Appellee Buford L. Chesser, his wife, appellee Helen Chesser, and appellant Ellen Patricia Sheehan (the latter two being passengers in the Chesser vehicle) were all severely injured as a result of the negligence of Pitts.

At the time of the accident, appellee Liberty Mutual Fire Insurance Company had in full force and effect a policy of automobile liability insurance on the Chesser vehicle. This policy contained these relevant "UNINSURED MOTORISTS COVERAGE" provisions, viz:

"Protection Against Uninsured Motorist Coverage

"The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle; provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

"No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.

\*　\*　\*　\*　\*　\*

"Uninsured Motorists Coverage

"(C) the limit for Uninsured Motorists Coverage is $20,000 applicable to each accident and such limit is the total limit of the company's liability for all damages because of bodily injury sustained by one or more persons as the result of any one accident.

\*　\*　\*　\*　\*　\*

"The company shall not be obligated to pay under the Uninsured Motorists Coverage that part of the damages which the insured may be entitled to recover from the owner or operator of an uninsured highway vehicle which represents expenses for medical services paid or payable under the Medical Expense Coverage."

The policy also contained a "Medical Expense Coverage" provision which was limited to $1,000 for each person. Under this provision, each claimant received $1,000.

On May 28, 1969, the insurer was informed that the appellant Sheehan and appellees Chesser would make claims under the uninsured motorist provisions of the policy, the Pitts vehicle having been found to be uninsured.

On October 23, 1969, appellant Sheehan made formal claim against the insurer under the uninsured motorist provisions of the policy. On March 11, 1970, she made formal demand for arbitration under the policy.

On March 3, 1970, appellant Sheehan "with the full knowledge \* \* \* [of the insurer] of her intention to so do, file suit" against the uninsured motorist Pitts. On May 21, 1970, default judgment for $50,000 was rendered against the uninsured motorist in her favor.

On July 2, 1970, the insurer notified appellant's attorney of its refusal to arbitrate. The insurer's Bill of Interpleader was filed on August 10, 1970. On February 12, 1971, the insurer was notified by the attorney for the appellees Chesser "of their intention to file a law suit for damages against the uninsured motorist, Troy Lee Pitts."

On March 5, 1971, appellees Chesser filed suit "with the full knowledge of" the insurer. On April 19, 1971, default judgments for $100,000, in each case, were recovered against Pitts by appellees Chesser.

Three questions, "to be decided" by the trial court, were stipulated by the parties, viz:

"1. Is the complainant entitled to deduct from the proceeds of the uninsured motorist fund of Twenty Thousand Dollars ($20,000.00) the sum of Three Thousand Dollars ($3,000.00) previously paid to the respondents under the medical expense provision of said policy of insurance by virtue of the provisions of said policy as set out in this stipulation of facts, or is the complainant obliged to interplead the remaining $3,000.00?

"2. What pro-ration of the uninsured motorist fund should be made between the respondents, Buford L. Chesser, Helen Chesser and Ellen Patricia Sheehan?

"3. What attorney's fee, if any, is due the attorney representing the complainant-insurer, Liberty Mutual Insurance Company, as attorney's fee in this matter?"

As we have already indicated, the trial judge, sitting in equity, answered these three questions by: Ordering the $3,000 interpleaded into court; ordering a proration

of the fund between the claimants, one-third each; and ordering an attorney's fee of $250 to be paid the insurer's attorney of record.

Apparently, the trial court rendered its decree, ordering the insurance company to pay the $3,000 into court, in reliance on our recent decision in Employers National Insurance Company v. Parker, 286 Ala. 42, 236 So.2d 699 (1970). There, we held, under the facts of that case, that the insurer was not entitled to credit medical payments against its uninsured motorist liability. There is no contention made on this appeal as to the correctness of that part of the decree.

The injuries suffered by these parties were extensive, severe and permanent. According to the "Stipulation of Facts," the special damages of each are as follows: Appellant Sheehan—$15,065.34; appellee Buford L. Chesser—$14,981.53; appellee Helen Chesser—$3,186.25.

It must have been obvious to the insurer, as well as to the claimants, at an early stage in these proceedings, that the policy proceeds would be wholly insufficient to satisfy the claims. Undoubtedly, this conclusion led to the filing of the Bill of Interpleader.

And, now we pass to a consideration of the contentions of the parties on this appeal.

Each of the appellant's argued assignments of error (1, 2, 3, 4, 5, 10, 11 and 12), is directed to one or the other of these two contentions: that the trial court erred in awarding an attorney's fee of $250; or, that the trial court erred in ordering a proration of the "fund," one-third to each claimant.

■ We first address ourselves to the question as to whether the trial court erred in awarding the insurer an attorney's fee.

Counsel for appellant contends that failure of the insurer to pay the $3,000 into court (until ordered to do so) demonstrated a lack of good faith on its part, which should be considered in determining whether it is entitled to an attorney's fee.

Appellee Liberty Mutual's position is that allowance of an attorney's fee is discretionary with the trial court and unless there is an abuse of that discretion, the court cannot be put in error. (As to the distribution of the fund, it is content to allow that matter to be argued by the respective claimants.)

Equity Rule 36 authorizes allowance of attorneys' fees in interpleader suits. This court has said that the trial judge is invested with discretion in this regard and is only to be reversed for abuse of discretion. Chapman v. Rivers Construction Company, 284 Ala. 633, 227 So.2d 403 (1969); Jennings v. Jennings, 250 Ala. 130, 33 So.2d 251 (1948); Loop National Bank of Mobile v. Cox, 261 Ala. 148, 73 So.2d 364 (1954).

We are usually reluctant to hold that the trial judge abused his discretion in allowance of attorney's fees. In this instance, we are not impressed with appellant's argument that failure to pay the $3,000 medical payments into court should preclude an award of attorney's fee.

On June 11, 1970, we released our opinion holding that medical payments were not to be credited against the uninsured motorist liability in an automobile liability policy. Employers National Insurance Company v. Parker, supra. The instant interpleader suit was filed two months later on August 10, 1970. Nevertheless, we are unwilling to say that the insurer's withholding the $3,000 until ordered to pay it into court precludes an award of an attorney's fee on account of a lack of "good faith."

In Chapman v. Rivers Construction Company, supra, we held the chancellor did not abuse his discretion when he disallowed an attorney's fee. In that case, $6,000 was interpleaded into court, but the chancellor found an additional sum of $2,000 to be due one of respondents.

However, we did not have before us in *Chapman* the issue as to whether the trial court considered the "bona fides" of the interpleader action in determining whether an attorney's fee should be allowed the complainant.

Now, we proceed to consider appellant's other contention that the court's decree, in directing proration, is erroneous because she is entitled to the entire fund as a result of her priority. Her priority, she contends, emanates from the following: she sent formal notice of her claim to the insurer; she made formal demand for arbitration under the policy; she obtained a default judgment prior in time to those judgments acquired by appellees Chesser. She urges that we follow the time honored principle of "First in time, first in right."

We cannot agree that appellant is entitled to the entire fund. As appellees Chesser point out, this is the first occasion (on this appeal) that appellant has raised a contention that the trial court could not order a "proration," and that she was entitled to the entire fund. In fact, as appellees point out, proration was one of the issues submitted to the trial court for its decision, viz:

"2. What pro-ration of the uninsured motorist fund should be made between the respondents, Buford L. Chesser, Helen Chesser and Ellen Patricia Sheehan?

We have held:

"Parties are restricted on appeal to the theory on which the case is prosecuted or defended in the court below, and where both parties act upon a particular theory of the cause of action, or agree as to the question to be decided, they will not be permitted to depart therefrom when the case is presented for appellate review. * * * (Citations omitted)" Union Springs Telephone Company v. Green, 285 Ala. 114, 229 So.2d 503 (1969).

■ We think that, having stipulated that the trial court should decide the ques-

tion of "pro-ration," appellant should not be permitted to depart therefrom on this appeal.

■ We think there is yet another reason appellant is not entitled to priority. The acts which appellant contends gave her priority, could not have that effect. Neither the act of demand for arbitration nor formal notice of claim could give appellant any priority because the insurer already had notice of all the claims, and the fact that Pitts was uninsured. Nowhere, as appellees point out, does the policy require this demand as a condition precedent to claim under the uninsured motorist provision. With the insurer's knowledge of the claims, and that Pitts was uninsured, formal demand for arbitration and claim could serve no useful purpose and give a priority of claim.

As to whether there is priority by having first filed a certificate of judgment, appellees Chesser contend, this gives no priority because the policy provisions require written consent of the insurer to be obtained before judgment against the uninsured motorist is conclusive. This consent was not obtained. We need not determine this question in view of the other reasons we have given. However, we may call attention to our recent case of Gulf American Fire & Casualty Company v. Gowan, 283 Ala. 480, 218 So.2d 688 (1969). There, we gave effect to a clause identical to that in the instant case, which provided that no judgment against the uninsured should be conclusive against the insurer without its written consent. We note such consent was not obtained in the instant case. On the other hand, we did point out in *Gulf American* that such consent may not be withheld arbitrarily.

Notwithstanding we have concluded the appellant is unentitled to the entire fund, we think the appellant is entitled to a more equitable proration than the trial judge ordered. Quite frankly, we do not understand the basis for the court's proration of the "fund" in *equal parts* (to each claim-

ant), when each claimant sustained an *unequal loss*.

None of the parties has cited us to a case directly in point on the precise issue as to how to distribute an uninsured motorist fund interpleaded into court when the fund is insufficient to pay the claims, and the claims are on an equal footing. Neither have we been able to find such a case.

The closest case in point cited to us seems to be Burchfield v. Bevans, 242 F.2d 239 (C.C.A., 10th, 1957), which involved the distribution of the proceeds of automobile liability policy, interpleaded into court, the same being insufficient to pay the claims of judgment creditors. All the judgments were entered the same day, for all practical purposes. The court found the claimants to be on equal footing. It then held it was proper for the trial court to make a pro rata distribution of the fund among the several claimants. The court reasoned that, "An action of interpleader is equitable in nature and is controlled by equitable principles." It then quoted with approval the following statement from Century Indemnity Company v. Kofsky, 115 Conn. 193, 161 A. 101, 103:

"* * * ' "Whenever several persons are all entitled to participate in a common fund, or are all creditors of a common debtor, equity will award a distribution of the fund, or a satisfaction of the claims, in accordance with the maxim, Equality is equity; in other words, if the fund is not sufficient to discharge all claims upon it in full, or if the debtor is insolvent, equity will incline to regard all the demands as standing upon equal footing and will decree a pro rata distribution or payment." ' "

We think the reasoning of Burchfield v. Bevans, supra, to be sound. While not precisely "on all fours" factually with the case at bar, it seems to us it provides ample authority for our conclusion which follows.

We conclude that an equitable proration, under the facts of the case at bar, would be to give to each claimant that proportion of the "fund," remaining after payment of court costs and attorney's fee, which the amount of each claimant's "special damages" bears to the total of "special damages."

In view of our conclusions, the trial court's decree must be reversed and remanded, with instructions to enter a decree in conformity herewith.

Reversed and remanded with instructions.

LAWSON, COLEMAN and McCALL, JJ., concur.

HEFLIN, C. J., concurs in the result.

HEFLIN, Chief Justice (concurring in the result):

There may be reasons why an uninsured motorist insurer should not be allowed an attorney's fee when it interpleads the monetary limit of its policy in court. However, such reasons have not been presented to this Court in this case.

I have concurred in the result concerning the proration of the "fund" on the ratio that each claimant's "special damages" bears to the total of "special damages". However, under the language of this case, this does not set a precedent to be binding on future litigation. The language of the case makes it applicable only to the facts of this case. Personal injury litigation involves many facets of damages. To establish a set of binding guidelines in every case would be unrealistic.

I am fearful that the parties did not fully realize that the proration result was an alternate which this Court could adopt in an effort to reach an equitable solution to the problem. I would prefer to make a final decision on this matter in this case aft-

er an opportunity for all parties to present their positions. Perhaps on rehearing this Court will be favored with an analysis of this result, both pro and con.

## ON REHEARING.

### BLOODWORTH, Justice.

Both appellant and appellees have filed applications for rehearing.

Appellant insists again that she is entitled to priority because of her judgment. We feel that we adequately answered this contention in our original opinion. Appellant then says that we should consider the severity, nature and permanency of the injuries to the parties. We did consider these factors in reaching our result.

Appellees likewise are dissatisfied. They say the decision will cause them "irreparable harm." Appellees' attorney takes the blame for not having made "the terrible injuries and loss suffered by his clients, regardless of any special damages, absolutely clear to the court."

We were also favored with an amicus curiae brief, which we have read and considered.

We wish to reiterate that the decision we reached in the instant case was based on the stipulation of facts. The cause was submitted to the trial court on this stipulation of facts which disclosed, aside from the amounts of special damages, the *nature, severity* and *permanency* of injuries as to each party. If the parties thought the trial court (and this court) should have had the benefit of other evidence, it was their privilege to offer it.

All the testimony having been stipulated, and no testimony having been taken orally before the trial court, we review without any presumption in favor of the trial court's findings. Muscogee Construction Co. v. Peoples Bank & Trust Co., 286 Ala. 258, 238 So.2d 883 (1970); Machen v. Wilder, 283 Ala. 205, 215 So.2d 282 (1968); Blue Cross-Blue Shield of Alabama v. Jackson, 42 Ala.App. 594, 172 So. 2d 804 (1965); 5 C.J.S. Appeal and Error § 1564(1), p. 1262. Moreover, "We must sit in judgment on the evidence." Maryland Casualty Co. v. Allstate Insurance Co., 281 Ala. 671, 207 So.2d 657 (1968).

In conclusion, though it seems unnecessary to do so, we state again that the holding of this case is limited to the facts of this case. We do not intend, by virtue of this decision, to adopt the method of proration in this case as an approved formula or standard to be used in any and all cases arising from a proration of an insurance fund. We still believe that the result we reached is the most equitable under the stipulated facts of this case.

Each application for rehearing is overruled.

HEFLIN, Chief Justice (concurring in the result of overruling the applications for rehearing):

I am not pleased with the special damages proration treatment imposed by the opinion in this case. On the other hand, I am not convinced that the $\frac{1}{3}$ proration formula used by the trial court is equitable under the facts contained in the record. Perhaps a better solution would be to return the case to the trial court with directions to take full and complete testimony concerning injuries and damages, but since the case was submitted on an agreed statement of facts, I am reluctant to take that position.

I am convinced that this Court does not wish that portion of the opinion concerning special damages proration to be interpreted as establishing a formula or standard to be used in the future. This Court makes it clear that this formula is limited to the facts of the instant case. Therefore, I concur in the result of overruling the applications for rehearing.