FARMERS INSURANCE CO. v. VANWINKLE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:FARMERS INSURANCE CO. v. VANWINKLE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 FARMERS INSURANCE CO. v. VANWINKLE
2018 OK CIV APP 40
417 P.3d 1262
Case Number: 115746
Decided: 04/13/2018
Mandate Issued: 05/09/2018
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2018 OK CIV APP 40, 417 P.3d 1262

 

FARMERS INSURANCE COMPANY and CAROL LYNCH, Plaintiffs/Appellees,
v.
CHARMIN VANWINKLE and EAGLEMED LLC, Defendants/Appellees,
and
CHOCTAW EMS, Defendant,
and
PARKLAND HEALTH & HOSPITAL SYSTEM, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
PUSHMATAHA COUNTY, OKLAHOMA

HONORABLE JANA WALLACE, TRIAL JUDGE

REVERSED AND REMANDED WITH DIRECTIONS

Shena E. Burgess, SMILING, SMILING & BURGESS, Tulsa, Oklahoma, for Plaintiffs/Appellees

Gerald C. Dennis, Antlers, Oklahoma, for Defendant/Appellee Charmin VanWinkle

Douglas Turek, THE TUREK LAW FIRM, PC, The Woodlands, Texas, for Defendant/Appellant

P. THOMAS THORNBRUGH, CHIEF JUDGE:

¶1 Parkland Health & Hospital System (Parkland) appeals a decision of the district court apportioning pro rata the proceeds of an insurance settlement between injured party Charmin VanWinkle[1] and lienholder Parkland. On review, we reverse the decision of the district court and remand with directions.

BACKGROUND

¶2 This appeal has its roots in an automobile accident between VanWinkle and Carol Lynch in Hugo, Oklahoma. VanWinkle sustained injuries, and was transported to Parkland Hospital in Dallas. Parkland filed a Texas hospital lien (the Parkland lien) of $191,922 for treatment. VanWinkle alleged some $200,000 in damages. Lynch carried $25,000 in liability insurance with Farmers Insurance Company (Farmers). Farmers and Lynch filed an interpleader action in district court, seeking to interplead the $25,000 and have the court distribute it. Parkland argued that, as a medical lien claimant, it has a statutory priority of payment over VanWinkle. The court split the $25,000 over the objection of Parkland as follows: $11,666 to VanWinkle; $11,194 to Parkland; and $2,139 to the ambulance provider, EagleMed LLC. The claim and award of funds to the ambulance provider is not disputed.

STANDARD OF REVIEW

¶3 An interpleader proceeding is essentially equitable in nature. "[W]here the request for interpleader is approved, the questions to be considered are equitable in nature." Welch v. Montgomery, 1949 OK 80, ¶ 11, 205 P.2d 288. Equitable decisions are reviewed for abuse of discretion. "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Spencer v. Oklahoma Gas & Elec. Co., 2007 OK 76, ¶ 13, 171 P.3d 890 (emphasis omitted). Here, our review may encompass both claims of legal error and claims of the lack of an evidentiary basis for the court's decision. We review the district court's conclusions of law de novo. Nat'l Diversified Bus. Servs., Inc. v. Corporate Fin. Opportunities, Inc., 1997 OK 36, n. 18, 946 P.2d 662.

ANALYSIS

¶4 An initial oddity that presents itself is that Farmers' motion appears to be some form of "conditional interpleader" made on behalf of more than one party. In a traditional interpleader action, the plaintiff is a mere disinterested stakeholder, and the contest is strictly between the claimants to the fund. Magnolia Petroleum Co. v. Ouart, 1947 OK 117, 192 P.2d 698. The plaintiff has no interest in the relative merits of the parties or the disposition, and merely seeks to avoid liability for distributing the funds to the wrong party or the expense of participating in the litigation of such claims.[2] In this petition, however, the same counsel was apparently representing both Farmers Insurance and tortfeasor Carol Lynch, and both were listed as plaintiffs. Because of this, the petition sought not to simply implead the funds, but stated that Farmers was only prepared to implead provided that both the injured party and the medical lienholders would release tortfeasor Lynch from any further liability resulting from the collision.

¶5 The petition appears to meet none of the traditional requirements of interpleader because the interpleader was not disinterested, there had been no settlement, and there had been no adjudication of liability. Although the record indicates that VanWinkle did settle with Lynch more than three months after the interpleader was filed, we think it quite clear that the proper procedure is to first obtain a settlement, and then file a petition for interpleader if necessary. Any error appears harmless in the circumstances of this case, however.

I. "IN-STATE" VERSUS "OUT-OF-STATE" LIENS

¶6 This appeal raises two questions of law: (1) whether a court is required to give priority to a lien filed by a medical provider over the claim of an injured plaintiff, and (2) does this result change if the medical provider holding a lien is not a "hospital in this state"? Title 42 O.S. Supp. 2012 § 43 provides in part:

Every hospital in this state, which shall furnish emergency medical or other service to any patient injured by reason of an accident not covered by the Workers' Compensation Code, shall, if such injured party shall assert or maintain a claim against another for damages on account of such injuries, have a lien upon any recovery or sum had or collected or to be collected by such patient . . ..

¶7 "The obvious purpose of the hospital lien statute is to encourage hospitals to care for accident victims who might otherwise be non-paying patients." Kratz v. Kratz, 1995 OK 63, ¶ 12, 905 P.2d 753. The Oklahoma Supreme Court recognized in Vinzant v. Hillcrest Med. Center, 1980 OK 50, ¶ 7, 609 P.2d 1274, that "the legislatures of several states have enacted hospital lien statutes" in an attempt to lessen the burden imposed on hospitals by non-paying patients by giving hospitals liens on "any recovery a patient might obtain from a tortfeasor." This lien is given second priority to that of an attorney in the case. "The apparent legislative intent is to provide a certain degree of protection to the lawyer while he effectuates a recovery for his client." Id., ¶ 6. In this case, however, the plaintiff's attorney has made no claim, and no lien is recorded.

¶8 Parkland's lien was filed pursuant to the Texas hospital lien statute, Tex. Prop. Code § 55.002, which provides:

(a) A hospital has a lien on a cause of action or claim of an individual who receives hospital services for injuries caused by an accident that is attributed to the negligence of another person. For the lien to attach, the individual must be admitted to a hospital not later than 72 hours after the accident.

¶9 The Texas Legislature passed the hospital lien statute "to provide hospitals an additional method of securing payment for medical services, thus encouraging the prompt and adequate treatment of accident victims" and reducing hospital costs. McAllen Hosps., L.P. v. State Farm Cty. Mut. Ins. Co. of Tex., 433 S.W.3d 535, 537 (Tex. 2014). Hence, the public policy underlying the Oklahoma and Texas statutes is strongly similar. Parkland argues that, given the comparable and similar public policies of the two adjoining states, Oklahoma should give comity to Texas hospital liens that are incurred in providing accident treatment to Oklahomans.

¶10 Comity does not compel a state to follow another's policy but, instead, constitutes an expression of a state's voluntary decision to defer to the policy of another jurisdiction. Burrell v. Burrell, 2007 OK 47, n. 4, 192 P.3d 286, notes that comity is:

The most appropriate phrase to express the true foundation and extent of the obligation of the law of one nation within the territory of another. It is derived altogether from the voluntary consent of the latter, and it is inadmissible when it is contrary to its known public policy or prejudicial to its interests . . . (quotation marks omitted).

¶11 In this case, the public policies of the two states have a clear and substantially identical aim: to encourage the treatment of the state's citizens who have been injured in an accident. The aim is achieved by providing a treating hospital with a lien on any subsequent recovery from a tortfeasor. Given this legislative recognition that an enforceable lien encourages treatment, failure to give comity to Texas liens incurred in the treatment of Oklahoma citizens could undermine this public policy by discouraging "border" medical facilities from treating injured citizens of an adjoining state. In this case, therefore, giving comity is not only consistent with the public policy of Oklahoma, but a failure to give comity might undermine that policy. We find that the public policy of Oklahoma expressed in 42 O.S. § 43 is properly served by giving comity to the Texas lien in this case.[3]

¶12 Finally, if we were to interpret 42 O.S. § 43 as giving a special or unique priority to liens filed against Oklahoma citizens by "hospitals in this state" to the detriment of those filed against Oklahoma citizens by hospitals in other states in otherwise identical circumstances, a potential Fourteenth Amendment problem arises. The basic principle of equal protection of law examines whether a state law discriminates against out-of-state actors relative to similarly situated in-state actors. Direct Mktg. Ass'n v. Brohl, 814 F.3d 1129, 1143 (10th Cir. 2016). Because we find that the Texas liens should be given comity in this case, however, we need not address this issue.

II. THE DISTRICT COURT'S DECISION

¶13 The conclusion that the district court should have given comity to the Texas lien does not end our inquiry. The district court appeared to recognize the Texas lien as valid. It further (correctly) recognized that the "make whole" rule did not apply in this situation. The court made no finding that the status of the Parkland lien was different in any way because it was a Texas lien. The court, however, evidently concluded that VanWinkle's claim on the tendered policy limits as an injured plaintiff held an equal priority to the lien claim of the hospital, and ordered a pro rata distribution.

¶14 In its appellate brief, Farmers argues that, if funds are insufficient to cover all valid claims, the "common fund" doctrine applies and that equity will "regard all demands as standing on an equal footing," overcoming the lien's priority of payment over an unsecured debt. Farmers cites for this doctrine the 10th Circuit case of Burchfield v. Bevans, 242 F.2d 239 (10th Cir. 1957).[4] The Burchfield case, however, was decided more than ten years before 42 O.S. § 43 was first enacted, and does not appear to address a hospital lien at all. The "common fund" doctrine primarily concerns the right to recover attorney fees from parties benefitting from litigation who have no contractual relationship with the attorney securing the recovery.[5] Burchfield cited to a 1932 Connecticut case (Century Indem. Co. v. Kofsky, 161 A. 101 (Conn. 1932)) that described the doctrine as requiring a pro rata distribution of a fund that is insufficient to satisfy all claimants. The crucial distinction is that, in both Burchfield and Kofsky, the claims were equally situated in terms of priority. In both Burchfield and Kofsky the claimants were all parties injured by the same act of negligence. We find no principle that this doctrine applies between a medical lienholder and a plaintiff if settlement funds are insufficient to satisfy the medical lien. Nor do we find any case law indicating that the claim of a plaintiff against a settlement is equally situated to that of a lienholder.

¶15 Farmers' citation to general equity principles stated in 48 C.J.S. Interpleader § 45 is likewise of little value. We must be mindful of the maxim aequitas sequitur legem - "equity follows the law." If the law establishes that a lien has priority over the otherwise unsecured damages claim of an injured party, that rule will not change simply because the question arises in an equitable interpleader action. We find that the court could not order a pro rata distribution that included the injured party under the facts of this case.

CONCLUSION

¶16 We find no authority for a pro rata distribution of the settlement in this case to the injured party, and hold that Oklahoma would give comity to the Parkland lien. We do not hold that any and all medical liens from foreign states should be given comity, and make no comment on situations that do not involve the three critical facts in this case. These are: (1) citizens of Oklahoma; (2) injured in an accident that took place in Oklahoma; and (3) treated in a state that has a similar lien statute and similar public policy aims. Under these circumstances, however, we find that the court should give comity to the Parkland lien. We therefore reverse the district court's decision, and remand for a distribution order awarding all of the insurance proceeds on a pro rata basis to Parkland and EagleMed.

¶17 REVERSED AND REMANDED WITH DIRECTIONS.

WISEMAN, P.J. and FISCHER, J., concur.

FOOTNOTES

[1] It should be noted that VanWinkle did not file an answer brief in this appeal.

[2] The classic examples are bank accounts or life insurance policies that have multiple claimants. The holder of the funds has no interest in which claimant receives them, but only wishes to avoid liability for a wrongful distribution.

[3] Without specifically addressing the comity issue, we reached the same result in Ramirez v. Dallas County Hospital District, 2010 OK CIV APP 146, 245 P.3d 627. Since Ramirez was decided, the Legislature has not amended the relevant portions of 42 O.S. Supp. 2012 § 43. Failure of the Legislature to change the law after judicial construction amounts to "ratification of the construction placed upon the statute by the Court." Couch v. Int'l Bhd. of Teamsters, 1956 OK 239, ¶ 6, 302 P.2d 117.

[4] Farmers' brief is somewhat odd, in that it maintains a federal citation format throughout, rather than the required Oklahoma format, and cites persuasive federal law in preference to state precedent.

[5] See Boeing Co. v. Van Gemert, 444 U.S. 472, 478-79, 100 S. Ct. 745, 62 L.Ed.2d 676 (1980) (in accord with traditional practice in courts of equity, a litigant or an attorney who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2010 OK CIV APP 146, 245 P.3d 627, RAMIREZ v. DALLAS COUNTY HOSPITAL DISTRICT
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1947 OK 117, 192 P.2d 698, 200 Okla. 258, MAGNOLIA PETROLEUM CO. v. OUART
Discussed
 1997 OK 36, 946 P.2d 662, 68 OBJ 1167, National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.
Discussed
 1956 OK 239, 302 P.2d 117, COUCH v. INTERNATIONAL BHD. OF TEAMSTERS, ETC.
Discussed
 1995 OK 63, 905 P.2d 753, 66 OBJ 2032, Kratz v. Kratz
Discussed
 2007 OK 47, 192 P.3d 286, BURRELL v. BURRELL
Discussed
 2007 OK 76, 171 P.3d 890, SPENCER v. OKLAHOMA GAS & ELECTRIC COMPANY
Discussed
 1980 OK 50, 609 P.2d 1274, Vinzant v. Hillcrest Medical Center
Discussed
 1949 OK 80, 205 P.2d 288, 201 Okla. 289, WELCH v. MONTGOMERY
Discussed
Title 42. Liens
 Cite
Name
Level

 42 O.S. 43, Hospital Liens in Personal Injury Cases - Priority - Exception
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA